OPINION OF THE COURT
Gerald Sheindlin, J.
Francisco Torres, also known as Alfredo Maldonado, was indicted and brought to trial before a jury for the crime of criminal sale of a controlled substance in the third degree, a class B felony. Richard L. Giampa, Esq., was assigned to represent the defendant pursuant to County Law article 18-B. After the trial, the defendant was convicted of the top charge of the indictment and was subsequently sentenced to a period of incarceration. Now, defense counsel submits an expense voucher, pursuant to article 18-B, for the .sum of $3,927.50. The issue presented to this court is how much, if any, of defense counsel’s fee request should be granted, considering the fact that the trial proceedings were unnecessarily prolonged by Mr. Giampa’s contemptuous and unprofessional behavior. Due to the outlandish conduct of Mr. Giampa, as hereinafter noted, which resulted in a finding of contempt (which cannot be purged), the punishment for which was subsequently expunged, this court reluctantly approves only the amount authorized by statute, to wit, $1,200, but no more. Any greater award would be tantamount to rewarding a blatant disregard of the rules regarding the conduct of attorneys. It would be using public funds to foster and promote such unacceptable behavior.
DISCUSSION
As a threshold matter, this court notes that it expects and welcomes intense advocacy in the courtroom. However, a distinction must be made between intense advocacy and contumacious refusals to obey a court’s lawful orders. This court distinguishes between the type of unacceptable abandonment of professional conduct, as demonstrated by Mr. Giampa in the instant case, and vigorous, intense advocacy (cf., Matter of Rotwein [Goodman], 291 NY 116 [1943]; cf., People v Walker, 135 Misc 2d 370 [Sup Ct, Bronx County 1987]). Indeed, this court is mindful that long, burdensome arguments can be the hallmark of excellent advocacy and in-depth preparation. However, in the case at bar, this court is not dealing with mere repetition or prolonged arguments, but rather with a *399 consciously employed, persistent and pernicious pattern of contemptuous behavior which cannot be tolerated.
The trial of Mr. Torres was permeated with insolent behavior by Mr. Giampa. During the proceedings, defense counsel consistently made sarcastic and derogatory remarks to the court such as:
"I’m not infallible like your Honor * * *
"You [the court] don’t want to hear objections because you are well-knowing * * *
"[T]he difference [between you and I] is Your Honor is not aware that he makes errors * * *
"Obviously the law is foreign to Your Honor in many respects.”
Mr. Giampa also saw fit to inform the Bench that this court’s manner of conducting voir dire was "offensive”, that a court ruling was "unbecoming” and that the "Judicial Code also deals with judges.” Despite repeated and detailed warnings by the court, Mr. Giampa continued in this insolent vein and made the accusation that the court’s primary concern in trying the case was "so maybe the statistics can get in.”
Finally, in the most bizarre, strange and deliberate excoriation of the court, Mr. Giampa referred to this Judge in open court as a "wild lunatic”. Mr. Giampa was summarily held in contempt. Undaunted by this finding, Mr. Giampa continued his vitriol, and accused this court of lying ("Your statement is an absolute lie”). Mr. Giampa’s comments, made as they were by an experienced and skilled defense counsel, exceeded the bounds of proper advocacy. His comments were made willfully, with the intent to undermine the dignity and authority of the court in such a manner as to render it unable to conduct its normal business in an appropriate manner. This is clearly contemptuous behavior. (See, Matter of Werlin v Goldberg, 129 AD2d 334 [2d Dept 1987]; Matter of Mangiatordi v Hyman, 106 AD2d 576 [2d Dept 1984]; Matter of LaDuca v Bergin, 86 AD2d 983 [4th Dept 1982].)
Notably, Mr. Giampa’s disrespectful comments were not sporadic outbursts. Rather, Mr. Giampa’s disgraceful behavior constituted a carefully chosen trial strategy, the tactics of which were designed to denigrate the dignity of the court. Such tactics served to unduly lengthen the trial. For example, prior to the commencement of voir dire, this court advised both counsels of the procedures which were to be used in jury selection. Then, in violation of the court’s directive to conduct *400 the voir dire in an orderly manner, Mr. Giampa began his questioning by informing the jury: "I am a lawyer and the Judge is a lawyer with a political appointment to the bench.” Despite this court’s specific instruction that defense counsel refrain from making this baseless and inappropriate remark, Mr. Giampa was not to be deterred. In willful disobedience of this court’s lawful mandate, he continued to engage in this line of commentary.*
Willful defiance of the court’s lawful rulings, a clearly contemptuous act (United States v Lumumba, 794 F2d 806 [2d Cir], cert denied 479 US 855 [1986]; Judiciary Law § 750 [A] [3]), appeared to be Mr. Giampa’s specialty. Defense counsel had a penchant, despite this court’s explicit rulings, to make arguments in front of the jury. At times, defense counsel waited for the jury to be produced before springing his argu *401 ments upon the court. At one point, Mr. Giampa denigrated the dignity of the court by sarcastically remarking after the court issued a curative instruction, "[w]e are all enlightened by that, [n]ow I can go on to further planes.” Such conduct, which is an affront to the respect due to the court, has been recognized to be contemptuous behavior. (See, United States v Giovanelli, 897 F2d 1227 [2d Cir, docket 89-1274].) One of the most outrageous examples of Mr. Giampa’s disgraceful behavior occurred when defense counsel, upon exiting the robing room and entering the open courtroom, instructed the defendant to "voice something right now”. In response to Mr. Giampa’s urging, defendant promptly stated in front of the jury panel that he had been in custody for 19 months, faced 25 years in jail, and that the court had prevented him (defendant) from receiving adequate representation. The defendant did not testify at trial.
The record is replete with examples where defense counsel unreasonably and unnecessarily expended time. For example, defense counsel made repeated, redundant applications to the court regarding the voir dire procedures, which the court had ruled upon several times. Also, Mr. Giampa persisted rearguing at length a Wade matter on which another court had ruled and which this court denied three times. Defense counsel also persisted to debate an issue regarding additional fees for a chemist, another topic which had already been ruled on twice by another court and which this court also addressed two times.
Additionally, Mr. Giampa engaged in improper behavior during his opening and closing statements. He repeatedly and inappropriately remarked, despite admonitions from the court, that he had not participated in jury selection. Defense counsel unnecessarily prolonged cross-examination when he persisted in inquiring on a topic regarding other drug arrests which the court had already found irrelevant and had instructed counsel not to inquire on. Mr. Giampa also persisted in repeating questions which had been asked and answered several times. For example, defense counsel asked approximately 50 repetitive questions, which covered some 20 pages of transcripts, on the subject of the texture of cocaine. Objections to these questions were sustained, since the topic had previously been covered in depth. Furthermore, when objections to his queries were sustained, Mr. Giampa would, contrary to the court’s orders, argue his disapproval of the court’s ruling in front of the jury. Quite often, these arguments were not of any legal *402 merit, but were rather mere quibbling based on specious grounds. At one point during cross-examination, Mr. Giampa began arguing with the court in front of the jury about his (Giampa’s) mother, stating "[y]ou leave it up to me as to whether I will bring my mother into this. There are some personal things that I think if I choose to mention my mother, with the respect I have for my mother, it’s okay, Judge. You don’t have to protect her against what I say about her.”
Viewed in its entirety, Mr. Giampa’s conduct can only be seen as contemptuous since it was evidently designed to impugn the court’s authority and foster an atmosphere of disrespect in derogation of courtroom decorum (Weltz v Raiff & Sons, NYLJ, Jan. 22, 1990, at 33, col 3; Judiciary Law § 750 [A] [1]). In finding Mr. Giampa’s conduct contemptuous, this court rules that although the punishment associated with a finding of contempt may be purged, the finding of contemptuous conduct can never be purged. This court notes that Judiciary Law § 750 enumerates the acts which constitute contemptuous conduct. By comparison, Judiciary Law § 751 addresses what punishment a court may impose once a finding of contempt has already been made. Clearly, the sanctions are ancillary to and separable from the contempt finding. Thus, a court can allow parties to purge themselves of the contempt punishment, the ancillary product of a contempt finding, since punishment pursuant to section 750 of the Judiciary Law "is remedial and coercive, and the [contemnor] * * * holds the key to his freedom.” (People ex rel. Valenti v McCloskey, 6 NY2d 390, 399 [1959].) However, a finding of contemptuous behavior cannot be expunged, since the conduct which constituted the finding is a given act and cannot be erased. Here, although this court reluctantly expunged the punishment after Mr. Giampa offered his lukewarm apology for insulting the court, this court’s finding of contempt nonetheless remains.
CONCLUSIONS
The purpose of County Law article 18-B is to alleviate, in some measure, the financial burden upon the court-appointed lawyer who defends an indigent defendant (People v Berkowitz, 97 Misc 2d 277 [Sup Ct, Kings County 1978]). Article 18-B was not designed as a fund to reward insolent and contemptuous behavior by defense attorneys. Furthermore, County Law § 722-b provides that an attorney is entitled to no more than *403 $1,200 unless "extraordinary circumstances” can be shown. Clearly, in this case Mr. Giampa’s reprehensible behavior does not establish such "extraordinary circumstances” which would entitle him to additional compensation. Indeed, the only "extraordinary circumstance” presented in this case is the shockingly disrespectful attitude of Mr. Giampa toward the court. Accordingly, this court reluctantly awards Mr. Giampa $1,200 for services rendered in the case of Francisco Torres.
Furthermore, a copy of this opinion shall be submitted to the disciplinary committee for such further action as it may deem appropriate.

 "mr. giampa: [I]t is my understanding you are an acting Supreme Court Judge. It is my understanding that you have a political appointment to be an acting Supreme Court Judge.
"the court: That’s nonsense.
"mr. giampa: That’s not true?
"the court: I don’t know why you keep on insisting.
"mr. giampa: You are an elected Supreme Court Judge, Sir? If you are, I am wrong.
"the court: Go on with your [other] argument, will you please?
"mr. giampa: That isn’t a political appointment in the City?
"the court: It’s not, that’s why you’re so silly.
"mr. giampa: You’re absolutely appointed by the Mayor of this City?
"the court: Go ahead, Sir.
"mr. giampa: And you have told this jury that that is not only untruthful but that I should be embarrassed for making that statement. I received that question from a County Court Clerk, his name is Bill Kelly who is a former assistant, one of the best assistant district attorneys in the Bronx District Attorney’s Office who spent about fifteen to twenty years in that office in the Homicide Bureau and was at one time Deputy Bureau Chief of the Homicide Bureau and probably the best Deputy Bureau Chief the Bronx District Attorney’s Office ever has ever had. He now sits as a County Court Clerk. And will be soon a Supreme Court Judge in the good County of Rockland and he used to ask that question and I don’t think there is anything inappropriate with that question, especially when Your Honor continues to demean me in front of this jury as though I am unworthy of being a lawyer.
"Well, Your Honor fits into those exact time [sic] of being a lawyer. The fact is you have a political appointment and I do not seek that political appointment. Now, I don’t wish to get personal but, when Your Honor personally chooses to embarrass me in front of the jury—
"the court: That’s enough.
"mr. giampa: And does it on the record—
"the court: The record is closed.”